UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FERNANDO MORALES CAMPOS, ANTONIA
ESCAMILLA, EMILIANO ESPINOZA, MIGUEL
ESPINOZA, AGUSTINA GALINDO, PATRICIO
GUERRERO, PEDRO HERNANDEZ JIMENEZ,
NICOLAS NAVARRETE, CRISTIHAN ROSALES
RAMIREZ, and AMPARO SALAZAR,

              Plaintiffs,

      - against -

GABRIELA'S RESTAURANT AND TEQUILA BAR,
GABRIELA'S REAL MEX 93, LLC, GABRIELA'S
HOLDING, LLC, ALICART, INC., NAT MILNER,
FERNANDO AQUINO, MOISES GALARZA, JAIME
SANTOS, and DEMETRIO GALVEZ,

              Defendants.

**11 CIV 3150**

COMPLAINT

ECF Case

PLAINTIFFS DEMAND A
TRIAL BY JURY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      Plaintiffs Fernando Morales Campos ("Campos"), Antonia Escamilla

("Escamilla"), Emiliano Espinoza ("E.Espinoza"), Miguel Espinoza ("M.Espinoza"), Agustina

Galindo ("Galindo"), Patricio Guerrero ("Guerrero"), Pedro Hernandez Jimenez ("Jimenez"),

Nicolas Navarrete ("Navarrete"), Cristihan Rosales Ramirez ("Ramirez"), and Amparo Salazar

("Salazar") (collectively "plaintiffs"), through their attorneys, Vladeck, Waldman, Elias &

Engelhard, P.C. and the Urban Justice Center, complain of defendants Gabriela's Restaurant and

Tequila Bar, Gabriela's Real Mex 93, LLC, Gabriela's Holding, LLC, Alicart, Inc. (collectively

"the Restaurant"), Nat Milner ("Milner"), Fernando Aquino ("Aquino"), Moises Galarza

("Galarza"), Jaime Santos ("Santos"), and Demetrio Galvez ("Galvez") (collectively "Gabriela's"

or "defendants"):

## NATURE OF ACTION

1.      Gabriela's unlawfully exploits its low-wage, back-of-house restaurant employees by stealing their earned tips and wages; dodging overtime payments; and blocking access to information about employees' rights.  By pocketing plaintiffs' earned wages, Gabriela's turns what were already low-paying jobs into work for below the minimum wage.  Gabriela's forces plaintiffs to abide by its unlawful policies and practices or face losing their jobs.   In addition, Gabriela's creates a hostile work environment where its female employees, particularly older female employees, are subject to constant and degrading sexual and age-related harassment and retaliation.

2.      Plaintiffs are current and former cooks, dishwashers, packers, delivery persons, busboys, and food workers at Gabriela's, which operates a Mexican restaurant and bar in Manhattan.  Plaintiffs bring this action to remedy defendants' failure to pay minimum wages and overtime owed to them; defendants' unlawful deductions from wages; defendants' unlawful retention of gratuities; defendants' failure to pay the spread of hours; sex discrimination; and age discrimination.  Defendants' conduct violates the Fair Labor Standards Act of 1938 ("FLSA"), as amended by 29 USC §§ 201 et seq.; 12 N.Y. Code of Rules and Regulations §§ 142 et seq., promulgated and enforced under the New York Minimum Wage Act, N.Y. Labor Law §§ 650 et seq. ("NYMWA"); the N.Y. Labor Law §§ 190 et seq. ("Labor Law"); the New York State Human Rights Law, Executive Law § 290 et seq. (the "Executive Law"); and the Administrative Code of the City of New York § 8-107 et seq. (the "City Law").  Plaintiffs seek declaratory and injunctive relief, compensatory and punitive damages, unpaid wages for work performed, and liquidated damages, together with reasonable attorneys' fees, costs of this action, pre- and post-

judgment interest, and other appropriate relief pursuant to the FLSA § 16(b); 29 U.S.C. § 216(b); the NYMWA; N.Y. Labor Law §§ 198 and 663(1); the Executive Law; and the City Law.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over plaintiffs' FLSA claims set forth herein under 28 U.S.C. §§ 1331 and 29 U.S.C. § 216(b) because those claims arise under federal law.

4.      This Court also has supplemental jurisdiction over plaintiffs' NYMWA, Labor Law, Executive Law, and City Law claims pursuant to 28 U.S.C. § 1367 because those claims closely relate to the FLSA claims, having arisen from a common nucleus of operative facts, such that the NYMWA and Labor Law claims form part of the same case or controversy.

5.      Pursuant to § 8-502(c) of the City Law, prior to filing this Complaint plaintiffs served a copy of the Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants regularly conduct business within, and a substantial part of plaintiffs' work is conducted within, the Southern District of New York.

## PARTIES

### Plaintiffs

7.      Plaintiff Campos worked for defendants from approximately March 2008 to August 2009. He resides in New York City. He worked first as a dishwasher and then as a cook for defendants.

8.      Plaintiff Escamilla is a woman who was born in 1966. Escamilla worked for defendants from approximately May 1995 to 2005 as a food preparer and food preparation

manager.  Escamilla worked from approximately 2006 until July 30, 2010 as a sous chef for defendants.  She resides in New York City.

9.     Plaintiff E.Espinoza has worked for defendants from on or about April 2009 to the present.  He resides in New York City.  He works as a dishwasher for defendants. He is also responsible for other duties, such as cleaning.

10.    Plaintiff M.Espinoza worked for defendants from approximately the spring of 2007 to June 2010.  He resides in New York City.  Until approximately April 2010, he worked as a delivery person; in approximately April 2010 he became a packer and dishwasher for defendants.

11.    Plaintiff Galindo is a woman who worked for defendants from approximately April 2007 until February 2008 and then from approximately January 2010 until the present.  She resides in New York City.  From approximately April 2007 through February 2008, Galindo was responsible for making tortillas.  When she returned to work for Gabriela's in approximately January 2010, she again made tortillas but was given responsibility for making salads in or about February 2010.

12.    Plaintiff Guerrero worked for defendants from approximately February 2010 through the present.  He resides in New York City.  He has worked preparing food for defendants throughout his tenure.

13.    Plaintiff Jimenez worked for defendants from the summer of 2006 to around March 2008, and from early 2009 to around February 2010.  He resides in New York City.  He worked as a cook and at the prepping station for defendants.  He also worked as a delivery person.

14.     Plaintiff Navarrete has worked for defendants from approximately September 2003 to 2005 and then from approximately 2006 to the present. He resides in New York City. He works as a delivery person and dishwasher for defendants.

15.     Plaintiff Ramirez worked for defendants from on or around April 30, 2009 to on or around September 9, 2010. He resides in New York City. He worked as a busboy for defendants; he also worked as a barback for the last two days of his employment with defendants. Sometimes Ramirez did side-work like cleaning the windows and bathrooms.

16.     Plaintiff Salazar is a woman who was born in 1958. Salazar has worked for defendants from approximately September 1999 until 2005 and then from approximately 2006 to the present. She resides in New York City. She works as a cook and at the prepping station for defendants.

Defendants

17.     Defendant Gabriela's Restaurant and Tequila Bar is a New York corporation with its principal place of business located at 688 Columbus Ave, New York, New York 10025-7011. Upon information and belief, Gabriela's Restaurant and Tequila Bar is an entity related to Gabriela's Real Mex 93, LLC, Gabriela's Holding, LLC, and Alicart Group, Inc.

18.     Upon information and belief, at times relevant to this litigation, Gabriela's Restaurant and Tequila Bar is an enterprise engaged in interstate commerce within the meaning of the FLSA in that it:  (i) has had employees engaged in commerce or in the production of goods for commerce, or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person; and (ii) has had an annual gross volume of sales made or business done of not less than $500,000.

19.    At times relevant to this litigation, Gabriela's Restaurant and Tequila Bar employed more than fifty employees.

20.    Upon information and belief, at times relevant to this litigation, defendant Gabriela's Restaurant and Tequila Bar was plaintiffs' employer within the meaning of the FLSA, the NYMWA, the Labor Law, the Executive Law, and the City Law.

21.    Defendant Gabriela's Real Mex 93, LLC is a New York corporation with its principal place of business in New York, New York.  Upon information and belief, Gabriela's Real Mex 93, LLC is an entity related to Gabriela's Restaurant and Tequila Bar, Gabriela's Holding, LLC, and Alicart Group, Inc.

22.    Upon information and belief, at times relevant to this litigation, Gabriela's Real Mex 93. LLC is an enterprise engaged in interstate commerce within the meaning of the FLSA in that it: (i) has had employees engaged in commerce or in the production of goods for commerce, or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person; and (ii) has had an annual gross volume of sales made or business done of not less than $500,000.

23.    At times relevant to this litigation, Gabriela's Real Mex 93 employed more than fifty employees.

24.    Upon information and belief, at times relevant to this litigation, defendant Gabriela's Real Mex 93, LLC was plaintiffs' employer within the meaning of the FLSA, the NYMWA, the Labor Law, the Executive Law, and the City Law.

25.    Defendant Gabriela's Holding, LLC is a New York corporation with its principal place of business located at 688 Columbus Avenue, New York, New York 10025-7011.

Upon information and belief, Gabriela's Holding, LLC is an entity related to Gabriela's Restaurant and Tequila Bar, Gabriela's Real Mex 93, LLC, and Alicart Group, Inc.

26.   Upon information and belief, at times relevant to this litigation, Gabriela's Holding, LLC is an enterprise engaged in interstate commerce within the meaning of the FLSA in that it: (i) has had employees engaged in commerce or in the production of goods for commerce, or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person; and (ii) has had an annual gross volume of sales made or business done of not less than $500,000.

27.   At times relevant to this litigation, Gabriela's Holding, LLC employed more than fifty employees.

28.   Upon information and belief, at times relevant to this litigation, defendant Gabriela's Holding, LLC was plaintiffs' employer within the meaning of the FLSA, the NYMWA, the Labor Law, the Executive Law, and the City Law.

29.   Defendant Alicart, Inc. is a New York corporation with its principal place of business located at 1501 Broadway, Suite 515, New York, New York 10036.   Upon information and belief, Alicart, Inc. is an entity related to Gabriela's Restaurant and Tequila Bar, Gabriela's Real Mex 93, LLC, and Gabriela's Holding, LLC.   Alicart, Inc. manages a group of restaurants, including Gabriela's Restaurant and Tequila Bar, Artie's Delicatessen, Virgil's Real Barbeque, and five locations of the restaurant Carmine's.

30.   Upon information and belief, at times relevant to this litigation, Alicart, Inc. is an enterprise engaged in interstate commerce within the meaning of the FLSA in that it: (i) has had employees engaged in commerce or in the production of goods for commerce, or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for

commerce by any person; and (ii) has had an annual gross volume of sales made or business done of not less than $500,000.

31.     At times relevant to this litigation, Alicart, Inc. employed more than fifty employees.

32.     Upon information and belief, at times relevant to this litigation, defendant Alicart, Inc. was plaintiffs' employer within the meaning of the FLSA, the NYMWA, the Labor Law, the Executive Law, and the City Law.

33.     Upon information and belief, defendant Milner is an owner and/or managing partner of Gabriela's; is a resident of New York City; and exercised operational control over the Restaurant's business, including the terms and conditions of plaintiffs' employment including the ability to hire and fire employees, to maintain employment records, and to determine the rate and method of their compensation. Milner spends a significant amount of time at the Restaurant working in the office or on the floor.

34.     Upon information and belief, at times relevant to this litigation, defendant Milner was plaintiffs' employer within the meaning of the FLSA, the NYMWA, and the Labor Law.

35.     Upon information and belief, defendant Aquino is a male resident of New York City. Aquino is the executive chef of Gabriela's Restaurant and Tequila Bar and is the main supervisor at Gabriela's on a day-to-day basis. Upon information and belief, Aquino exercised operational control over the Restaurant's business, including the terms and conditions of plaintiffs' employment including the ability to hire and fire employees, to maintain employment records, and to determine the rate and method of their compensation.

36.     Upon information and belief, at times relevant to this litigation, defendant Aquino was plaintiffs' employer within the meaning of the FLSA, the NYMWA, and the Labor Law.

37.     Upon information and belief, defendant Galarza is a male resident of New York City.  Galarza is the General Manager at Gabriela's Restaurant and Tequila Bar.

38.     Upon information and belief, defendant Santos is a male resident of New York City.  Santos is a sous chef at Gabriela's Restaurant and Tequila Bar.

39.     Upon information and belief, defendant Galvez is a male resident of New York City.  Galvez is a sous chef at Gabriela's Restaurant and Tequila Bar.

## FACTUAL ALLEGATIONS

40.     During plaintiffs' employment, the Restaurant was open seven days a week for lunch and dinner service.  Throughout this period, the Restaurant employed at least 50 employees.

41.     Plaintiffs work at a location within New York, New York.  However, upon information and belief, some of defendants' supplies and customers came from locations outside of New York State.

### Gender Discrimination

42.     Galindo, Salazar and Escamilla have been subjected to sex discrimination in the form of sexual harassment and the creation of a hostile work environment by defendants Aquino, Santos, and Galvez.  The sexual harassment includes asking female plaintiffs out on dates and making sexually suggestive comments.   Aquino and Santos made sexual comments about women on a daily basis.

43.     Santos constantly make comments about sex.  Santos comments about women he did have sex with or wanted to have sex with, including comments such as, the woman "goes quickly with guys," "I'm going to fuck her," "she's a slut," "the woman was crazy," and numerous comments to the effect that women were created to be used and to entertain men.

44.     Santos frequently boasts about his sexual conquests.  Galindo once witnessed Santos tell Aquino that he did not care what a woman's body looked like when he decided to have sex with her.  He said that he had taken a woman out for drinks the previous weekend, and took her to a hotel.  He said that he liked the woman even though she had cellulite.  Santos told Aquino that he could give Aquino the woman's number if Aquino would like to go out with her.

45.     Galindo once heard Santos suggest that a female co-worker go into the bathroom to have sex with him, stating that he would be capable of having sex with her in the bathroom because he was tall.  That same co-worker had told Aquino that she did not like Santos's comments, but Santos continued to make the comments.

46.     E.Espinoza heard Aquino say that two women who had interviewed for jobs "had great breasts." Aquino told Salazar that when women submit job applications, he first finds out if the woman is cute.  Aquino stated that he did not like ugly women.  Aquino then said that he likes attractive women and moved his hands in a way to indicate that he likes women who have hourglass figures.  Escamilla frequently heard Aquino state that he wanted young, attractive women to work at Gabriela's to get the attention of customers.

47.     When female employees went to their lockers to change, Aquino and Santos would frequently comment, "Oh, the show is starting."

48.    Aquino told Salazar and Escamilla that he was sure that they were attractive when they were young.

49.    Campos frequently heard Aquino call his female co-workers, "good for nothing."

50.    Galarza, Aquino, and Santos had an arrangement with a hotel that they could go to rent rooms for free for sexual liaisons and boasted about this arrangement at work.

51.    In 2005, Gabriela's closed down for remodeling.  When it reopened in 2006, some of Gabriela's employees employed at that time were required to take a course concerning discrimination and sexual harassment and were given handbooks.  Galarza, Santos, and Aquino all attended that training.

52.    About six months after they received the employee handbooks, Galarza, Santos, and Aquino made a number of sexual comments about women while in the kitchen at Gabriela's.  Escamilla asked them why they made the comments when the employee handbook said they should not.  They responded that she could not understand because she was not a man.

53.    Although Escamilla complained to Aquino that she was offended by the sexual discussions, he did not change his behavior, nor did he instruct Santos to change his behavior.

54.    In or around 2007 until 2009, Galvez repeatedly asked Salazar to go on dates with him.  Galvez routinely called Salazar on her cell phone when she was not working, asking her to go out with him.  Galvez told his girlfriend that he was dating Salazar, and Galvez's girlfriend called Salazar to ask Salazar if that was the case.  Many times Galvez asked Salazar to go with him to a hotel and "see what happens."  He told Salazar that she would have problems at

work if she did not enter into a romantic relationship with him.  Salazar, however, refused to respond to Galvez's demands for a romantic relationship.

55.     Salazar got a new telephone number in 2009.  Galvez was upset when he discovered that he could no longer reach her through her cell phone.  He asked her why she had not given him her new cell phone number and told her, "we are not finished."  Once in 2010, when Galvez was intoxicated, Galvez asked Salazar why she would not go out with him.

Gender Discrimination: Retaliation

56.     When Galvez realized that Salazar was not going to respond to his demands for a romantic relationship, he began to regularly criticize her work.  Eventually Galvez stopped speaking with Salazar other than to berate her.

Age Discrimination

57.     Escamilla and Salazar were subjected to age discrimination by defendants Aquino, Santos, and Galvez, including being called "fucking old dogs," "slow," "grandmothers," "worthless," "stupid," "lazy," and "too old."

58.     For example, E.Espinoza heard Santos refer to Salazar and Ninfa Hernandez, another woman who was over 40, as "old bitches" approximately three times per day. He also heard defendants refer to Hernandez and Salazar as "fucking old ladies."  When work was busy, E.Espinoza heard defendants tell the older women employees to "move you fucking turtle."  He frequently heard defendants refer to older women employees as "fucking old bitch" and "grandmother."

59.     When Escamilla asked Galarza why Gabriela's did not hire more people with experience for the dining room of the restaurant, Galarza told Escamilla that he liked to have young girls working with customers.

60.     Santos told Salazar and Escamilla that they were old ladies and that he did not want to have to work with them.  He told them that they were "lazy old women" and "grandmothers" and could not move fast enough.

61.     Salazar once heard Aquino remark, "The old ladies can go to hell," referring to her and Escamilla.

62.     On May 7, 2010, Galvez yelled at Escamilla because she had not had time to finish preparing a taco station because she had to prepare the specials for the weekend.  When Escamilla asked Aquino to intervene, he laughed at her.  Realizing that Aquino and Galvez did not respect her, Escamilla left for the day.  Minutes after Escamilla left the restaurant, Santos announced on a restaurant loudspeaker that Galvez "made the old lady cry."

63.     After the events of May 7, 2010, it became clear that Gabriela's no longer wanted Escamilla as an employee.  As a result, Escamilla acknowledged her constructive discharge and ceased working for Gabriela's in June 2010.

64.     After Escamilla ceased working for Gabriela's, Santos declared that "Now that we've gotten rid of one, there are two left," referring to the fact that after Escamilla left, Salazar and Hernandez still worked for Gabriela's.

### Wage, Hour, and Labor Law Violations

65.     Defendants do not have any agreement with their employees that they would work more than forty hours per week and not be compensated for hours they worked in excess of forty hours per week.

66.     Defendants' failure to pay plaintiffs as required under the FLSA is willful and is not in good faith under the NYMWA or Labor Law.

Failure to Pay Overtime, Hours Worked, Minimum Wage, and/or Spread of Hours

67.     Plaintiffs' pay stubs purport to set forth an hourly rate and payment for hours worked at straight time and time-and-a-half overtime.

68.     Plaintiffs, however, work hours that far exceed the hours recorded on their pay stubs.  Defendants manipulate time clock entries, and pay their employees less than the wages owed to them.

69.     To avoid paying overtime premiums, defendants sometimes issue checks to plaintiffs under different people's names so that hours which should be paid at time-and-a-half are paid at straight time.  Plaintiffs are required to accept these checks if they wanted to be paid.

70.     Defendants sometimes miscalculate the time-and-a-half overtime rate so that plaintiffs are paid less than they earned.

71.     The Restaurant and most of the plaintiffs agreed that those plaintiffs would be paid at a wage that was at or above the minimum wage.  Because defendants fail to credit plaintiffs with all of the hours that they work, however, upon information and belief many of the plaintiffs are paid wages that are actually below the minimum wages.

72.     Defendants do not pay plaintiffs "spread of hours" pay for qualifying shifts.

73.     Defendants regularly fail to provide plaintiffs with the breaks to which they were entitled under law.

74.     Defendants gave employee handbooks only to Escamilla and Salazar.

75.     Although defendants posted a sign concerning plaintiffs' wage and hour rights after Gabriela's reopened, the sign is behind racks of glasses and thus obscured.  Upon information and belief, the poster is in English.

Claims of the Individual Plaintiffs

Campos

76.     Campos worked for defendants from approximately March 2008 until August 2009.

77.     During the time he worked for the Restaurant, Campos regularly worked more than 40 hours a week, often as many as 50 hours a week or more, but was not paid for the full number of hours or overtime that he worked.

78.     Although Campos worked evening shifts that were longer than six hours, he was not permitted to take breaks during any of his shifts.

79.     The Restaurant agreed to pay Campos first $7.50, then $8.00, then $8.50 per hour for his work at the Restaurant.  Because the Restaurant did not credit Campos with the full hours he had worked, however, upon information and belief the Restaurant failed to pay Campos the minimum wage for his hours worked.

80.     From approximately mid-March through mid-June 2008, Campos worked a number of shifts that were more than 10 hours long.  The Restaurant, however, failed to pay Campos for that spread of hours.

Escamilla

81.     Escamilla worked for defendants from approximately 1995 until 2005, and then from 2006 until July 2010.

82.     From approximately the year 2000 through July 2010, Escamilla regularly worked more than 40 hours per week for defendants, often as much as 52 hours a week or more, but was not paid for the full number of hours or overtime that she worked.

83.     Although Escamilla was promoted to the position of sous chef, in or around March 2006, the Restaurant continued to pay her on an hourly basis and would not pay her if she did not work.

84.     Throughout her employment, Escamilla worked a number of shifts that were more than 10 hours long.  The Restaurant, however, failed to pay Escamilla for that spread of hours.

### E.Espinoza

85.     E.Espinoza worked for defendants from approximately April 2009 to the present.

86.     From approximately April 2009 through September 2010, E.Espinoza regularly worked more than 40 hours a week, sometimes as many as 70 hours per week, but was not paid for the full number of hours or overtime that he worked.  During that time, defendants also refused to permit E.Espinoza to take the full amount of breaks to which he was entitled.

87.     The Restaurant agreed to pay E.Espinoza first $7.50, then $7.75, then $8.25 per hour for his work at the Restaurant.  Because the Restaurant did not credit E.Espinoza with the full hours he had worked, however, upon information and belief the Restaurant failed to pay E.Espinoza the minimum wage for his hours worked.

88.     The Restaurant sometimes miscalculated the rate E.Espinoza should have been paid for overtime.  For example, E.Espinoza was several times paid $8.25 for regular hours and $11.63 for overtime hours – for work performed during the same week.

89.     From approximately February 2010 through August 2010, E.Espinoza worked more than 10 hours a day at least four days a week, but was not compensated for that spread of hours.

<u>M.Espinoza</u>

90.     M.Espinoza worked for defendants from approximately the spring of 2007 through June 2010.

91.     Although M.Espinoza regularly worked over 40 hours a week, often as much as 50 hours per week, he was not paid for the full number of hours or overtime that he worked. M.Espinoza was not permitted to take breaks during the time he worked.

92.     The Restaurant agreed to pay M.Espinoza first $7.15, then $7.25, then $8.00 per hour for his work in the Restaurant. Because the Restaurant did not credit M.Espinoza with the full hours he had worked, however, upon information and belief, the Restaurant failed to pay M.Espinoza the minimum wage for his hours worked.

93.     Aquino told M.Espinoza that Gabriela's did not have to pay him a higher wage because M.Espinoza received tips. Gabriela's, however, did not permit M.Espinoza to retain all the tips that he received as a delivery worker.

94.     From approximately August 2008 through June 2010, on three days a week M.Espinoza worked more than 10 hours a day. Defendants never compensated M.Espinoza for that spread of hours.

95.     M.Espinoza continued working for the Restaurant until defendants fired him in August 2010.

<u>Galindo</u>

96.     Galindo worked for defendants from April 2007 until February 2008, and then from January 2010 to the present.

97.     The Restaurant agreed to pay Galindo first $7.50 and then $8.00 per hour for her work in the Restaurant. The Restaurant often fails to pay Galindo the full number of hours that she worked.

98.     The Restaurant has not always paid Galindo the full overtime premiums to which she was entitled.

99.     Although Galindo regularly worked shifts during which she was entitled to a break, defendants did not permit her to take breaks until September 2010.

Guerrero

100.     Guerrero worked for defendants from February 2010 through the present.

101.     Although Guerrero regularly worked over 40 hours a week, often as many as 50 hours per week, he has sometimes not been paid for the full number of hours he works.

102.     The Restaurant agreed to pay Guerrero first $7.50, then $8.00, then $8.50 per hour for his work in the Restaurant. Because the Restaurant did not credit Guerrero with the full hours he had worked, however, upon information and belief the Restaurant failed to pay Guerrero the minimum wage for his hours worked.

103.     The Restaurant sometimes miscalculates the overtime pay to which Guerrero is entitled for his work. For example, the Restaurant once paid Guerrero $12.00 per hour for overtime during a week in which he was paid $8.50 for non-overtime hours.

104.     Once when the Restaurant failed to pay Guerrero for hours he had worked overtime, Aquino told him that the Restaurant would pay Guerrero for the hours in his next paycheck. When the Restaurant paid for those hours in the next paycheck, however, the Restaurant paid Guerrero the hours at his normal hourly rate – without an overtime premium.

105.    The Restaurant did not permit Guerrero to take breaks until approximately September 2010.

### Jimenez

106.    Jimenez has worked for defendants from approximately the summer of 2006 to around the spring of 2008 and from early 2009 to around February 2010.

107.    Defendants regularly failed to pay Jimenez for time that defendants required him to remain working after his scheduled shift, and rarely paid him the overtime pay to which he was entitled.

108.    Between approximately the spring of 2007 through the spring of 2008, five days a week plaintiff Jimenez worked six to seven hours as a cook and at a prepping station, then worked an additional three hours doing delivery work. He received tips but no wages for doing deliveries and did not receive all his tips on large orders. His hours doing delivery work were not recorded on the time clock or on his paystubs.

109.    The Restaurant agreed to pay Jimenez first $7.50 per hour and then $8.00 per hour for his work. Because the Restaurant did not credit Jimenez with the full hours he had worked and it failed to pay Jimenez any wages for his delivery work, however, there were periods, such as the period between the spring of 2007 and the spring of 2008, that the Restaurant failed to pay Jimenez the minimum wage for his hours worked.

### Navarrete

110.    Navarrete has worked for Gabriela's from approximately September 2003 through 2005 and then from approximately 2006 through the present.

111.   Throughout his employment Navarrete has regularly worked more than 40 hours a week, and often as many as 60 or more hours a week, but is not paid for the full number of hours or overtime that he worked.

112.   From approximately 2003 until approximately 2007, Navarrete worked doing food preparation work before 6:00 p.m. and delivery work after 6:00 p.m. During that time the Restaurant failed to pay Navarrete any wages for hours that he worked delivering food; Navarrete only received tips. The Restaurant did not pay Navarrete all the tips he earned on large orders.

113.   From 2003 through 2007, Navarrete regularly worked double shifts that were longer than 10 hours a day. Navarrete was not paid spread of hours on those qualifying days.

114.   Although Navarrete has always worked shifts that were longer than six hours, he was not permitted to take breaks prior to September 2010.

115.   The Restaurant agreed to pay Navarrete first $7.15 per hour and then $7.25 per hour for his work. Because the Restaurant did not credit Navarrete with the full hours he had worked and did not pay Navarrete any wages for his delivery work, however, the Restaurant failed to pay Navarrete the minimum wage for the hours he worked.

### Ramirez

116.   Ramirez worked for the Restaurant from approximately April 2009 through September 2010.

117.   Throughout his employment, the Restaurant often failed to pay Ramirez for all of the hours he worked.

118.    During the first five months of Ramirez's employment, Ramirez regularly worked over 40 hours a week, often as many as 45 hours per week, but was not paid for the full hours that he worked.  At times during his employment at the Restaurant, Ramirez worked 12 hour shifts; during those shifts, however, he was only given a single 30 minute break.

119.    For approximately the first fourteen months of plaintiff Ramirez's employment, he worked one to three days per week that qualified for "spread of hours" pay, but he never received this pay.

Salazar

120.    Salazar worked for the Restaurant from approximately 1999 through 2005 and from approximately 2006  through the present.

121.    From 1999 through November 2010, Salazar usually worked at least 40 hours per week, and often more than 40 hours per week.  Defendants, however, frequently refused to pay Salazar for all of the hours that she worked and/or all of the overtime hours she worked.

122.    During the time she worked for the Restaurant, Aquino sometimes required Salazar to punch out of the time clock and then required her to perform more work for the Restaurant.

123.    The Restaurant agreed to pay Salazar first $8.00 per hour, then $9.25 per hour and then $10.25 per hour for her work.  Because the Restaurant did not credit Salazar with the full hours she had worked, however, upon information and belief, the Restaurant failed to pay Salazar the minimum wage for the hours she worked.

Requiring Employees to Purchase Clothing/Protective Equipment

124.   Delivery workers are required to purchase a uniform t-shirt and jacket. Aquino told E.Espinoza that he would be reimbursed for these purchases when he left the Restaurant. After E.Espinoza was fired, he attempted to return his uniform, but Aquino refused to reimburse him.

125.   The Restaurant required delivery workers, including M.Espinoza, Jimenez, and Navarrete, to use and maintain their own bicycles and helmets to make deliveries for the Restaurant. Bicycles used for deliveries must be checked on a regular basis. Batteries for bicycle lights (which are required by law) and tires and brakes must be changed or repaired frequently. The Restaurant never paid for those repairs. If a delivery person's bicycle was stolen, the Restaurant refused to pay the cost of replacing the bicycle. Instead, the delivery person had to purchase a new bicycle.

## FIRST CAUSE OF ACTION

### The Restaurant: Executive Law: Sexual Harassment

126.   Plaintiffs repeat and reallege paragraphs 1 through 125 as if fully set forth herein.

127.   By the acts and practices described above, the Restaurant discriminated against Escamilla, Galindo, and Salazar in the terms and conditions of their employment, by sexually harassing them and/or subjecting them to a sexually hostile work environment in violation of the Executive Law.

128.   As a result of the Restaurant's discriminatory acts, Escamilla, Galindo, and Salazar have suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damages unless and until this Court grants relief.

## SECOND CAUSE OF ACTION

### Aquino, Santos, and Galvez: Executive Law: Sexual Harassment: Aiding and Abetting

129.    Plaintiffs repeat and reallege paragraphs 1 through 128 as if fully set forth herein.

130.    By the acts and practices described above, Aquino, Santos, and Galvez aided and abetted the Restaurant in discriminating against Escamilla, Galindo, and Salazar in the terms and conditions of their employment, by sexually harassing them and/or subjecting them to a sexually hostile work environment in violation of the Executive Law.

131.    As a result of Aquino, Santos, and Galvez's acts, plaintiffs Escamilla, Galindo, and Salazar have suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damages unless and until this Court grants relief.

## THIRD CAUSE OF ACTION

### The Restaurant: City Law: Sexual Harassment

132.    Plaintiffs repeat and reallege paragraphs 1 through 131 as if fully set forth herein.

133.    By the acts and practices described above, the Restaurant discriminated against Escamilla, Galindo, and Salazar in the terms and conditions of their employment, by sexually harassing them and/or subjecting them to a sexually hostile work environment in violation of the City Law.

134.    The Restaurant acted with malice and reckless indifference to the rights of Escamilla, Galindo, and Salazar under the City Law.

135.    As a result of the Restaurant's discriminatory acts, Escamilla, Galindo, and Salazar have suffered and will continue to suffer irreparable injury, emotional distress, and other

compensable damages unless and until this Court grants relief.

136.    Escamilla, Galindo, and Salazar are also entitled to punitive damages as a result of the Restaurant's malice and reckless indifference to their rights under the City Law.

### FOURTH CAUSE OF ACTION

#### Aquino, Santos, and Galvez: City Law: Sexual Harassment: Aiding and Abetting

137.    Plaintiffs repeat and reallege paragraphs 1 through 136 as if fully set forth herein.

138.    By the acts and practices described above, Aquino, Santos, and Galvez aided and abetted Gabriela's in discriminating against Escamilla, Galindo, and Salazar in the terms and conditions of their employment, by sexually harassing them and/or subjecting them to a sexually hostile work environment in violation of the City Law.

139.    Aquino, Santos, and Galvez acted with malice and reckless indifference to Escamilla, Galindo, and Salazar's rights under the City Law.

140.    As a result of Aquino, Santos, and Galvez's acts, Escamilla, Galindo, and Salazar have suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damages unless and until this Court grants relief.

141.    Escamilla, Galindo, and Salazar are also entitled to punitive damages as a result of the Restaurant's malice and reckless indifference to their rights under the City Law.

### FIFTH CAUSE OF ACTION

#### The Restaurant: Executive Law: Sexual Harassment: Retaliation

142.    Plaintiffs repeat and reallege paragraphs 1 through 141 as if fully set forth herein.

143.    By the acts and practices described above, the Restaurant retaliated against

Salazar for her opposition to unlawful employment practices in violation of the Executive Law.

144.   As a result of the Restaurant's retaliatory acts, Salazar has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damage unless and until this Court grants relief.

## SIXTH CAUSE OF ACTION

### Galvez: Executive Law: Sexual Harassment: Retaliation: Aiding and Abetting

145.   Plaintiffs repeat and reallege paragraphs 1 through 144 as if fully set forth herein.

146.   By the acts and practices described above, Galvez aided and abetted the Restaurant in retaliating against Salazar for her opposition to unlawful employment practices in violation of the Executive Law.

147.   As a result of Galvez's retaliatory acts, Salazar has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damage unless and until this Court grants relief.

## SEVENTH CAUSE OF ACTION

### The Restaurant: City Law: Sexual Harassment: Retaliation

148.   Plaintiffs repeat and reallege paragraphs 1 through 147 as if fully set forth herein.

149.   By the acts and practices described above, the Restaurant retaliated against Salazar in violation of the City Law.

150.   The Restaurant acted with malice and/or reckless indifference to Salazar's rights under the City Law.

151.   As a result of the Restaurant's retaliatory acts, Salazar has suffered and

will continue to suffer irreparable injury, emotional distress, and other compensable damage unless and until this Court grants relief.

152.    Salazar is also entitled to punitive damages as a result of the Restaurant's malice and reckless indifference to her rights under the City Law.

## EIGHTH CAUSE OF ACTION

### Galvez: City Law: Sexual Harassment: Retaliation: Aiding and Abetting

153.    Plaintiffs repeat and reallege paragraphs 1 through 152 as if fully set forth herein.

154.    By the acts and practices described above, Galvez aided and abetted the Restaurant in retaliating against Salazar for her opposition to unlawful employment practices in violation of the City Law.

155.    Galvez acted with malice and/or reckless indifference to Salazar's statutorily protected rights.

156.    As a result of Galvez's acts, Salazar has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damage unless and until this Court grants relief.

157.    Salazar is also entitled to punitive damages as a result of the Restaurant's malice and reckless indifference to her rights under the City Law.

## NINTH CAUSE OF ACTION

### The Restaurant: Executive Law: Age Discrimination

158.    Plaintiffs repeat and reallege paragraphs 1 through 157 as if fully set forth herein.

159.    By the acts and practices described above, the Restaurant discriminated

against Escamilla and Salazar in the terms and conditions of their employment by creating a hostile work environment on the basis of their age in violation of the Executive Law.

160.    As a result of the Restaurant's discriminatory acts, plaintiffs Escamilla and Salazar have suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damages unless and until this Court grants relief.

## TENTH CAUSE OF ACTION

### Aquino, Santos, and Galvez: Executive Law: Age Discrimination: Aiding and Abetting

161.    Plaintiffs repeat and reallege paragraphs 1 through 160 as if fully set forth herein.

162.    By the acts and practices described above, Aquino, Santos, and Galvez aided and abetted the Restaurant in discriminating against Escamilla and Salazar in the terms and conditions of their employment by creating a hostile work environment on the basis of their age in violation of the Executive Law.

163.    As a result of the acts of Aquino, Santos, and Galvez, plaintiffs Escamilla and Salazar have suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damages unless and until this Court grants relief.

## ELEVENTH CAUSE OF ACTION

### The Restaurant: City Law: Age Discrimination

164.    Plaintiffs repeat and reallege paragraphs 1 through 163 as if fully set forth herein.

165.    By the acts and practices described above, the Restaurant discriminated against Escamilla and Salazar in the terms and conditions of their employment by creating a hostile work environment on the basis of their age in violation of the City Law.

166.   The Restaurant acted with malice and reckless indifference to plaintiffs' rights under the City Law.

167.   As a result of the Restaurant's discriminatory acts, Escamilla and Salazar have suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damages unless and until this Court grants relief.

168.   Escamilla and Salazar are also entitled to punitive damages as a result of the Restaurant's malice and reckless indifference to their rights under the City Law.

<u>TWELFTH CAUSE OF ACTION</u>

<u>Aquino, Santos, and Galvez: City Law: Age Discrimination:<br>Aiding and Abetting</u>

169.   Plaintiffs repeat and reallege paragraphs 1 through 168 as if fully set forth herein.

170.   By the acts and practices described above, Aquino, Santos, and Galvez aided and abetted the Restaurant in discriminating against Escamilla and Salazar in the terms and conditions of their employment by creating a hostile work environment on the basis of their age in violation of the City Law.

171.   Aquino, Santos, and Galvez acted with malice and reckless indifference to the rights of Escamilla and Salazar under the City Law.

172.   As a result of the acts of defendants Aquino, Santos, and Galvez, plaintiffs Escamilla and Salazar have suffered and will continue to suffer irreparable injury, emotional distress, punitive, and other compensable damages unless and until this Court grants relief.

173.   Escamilla and Salazar are also entitled to punitive damages as a result of the Restaurant's malice and reckless indifference to their rights under the City Law.

## THIRTEENTH CAUSE OF ACTION

### The Restaurant, Milner, and Aquino: Unpaid Overtime Under the FLSA

174.    Plaintiffs repeat and reallege paragraphs 1 through 173 as if fully set forth herein.

175.    The Restaurant, Milner, and Aquino failed to pay plaintiffs Campos, Escamilla, E.Espinoza, M.Espinoza, Guerrero, Jimenez, Navarrete, and Salazar overtime for hours worked in excess of forty per week, as required under the FLSA § 7(a)(1), 29 U.S.C. § 207(a)(1).

176.    The Restaurant, Milner, and Aquino willfully violated the FLSA and/or showed reckless disregard for the statutorily protected rights of plaintiffs Campos, Escamilla, E.Espinoza, M.Espinoza, Guerrero, Jiminez, Navarrete, and Salazar.

177.    As a consequence of the Restaurant, Milner, and Aquino's willful violation of the FLSA, plaintiffs Campos, Escamilla, E.Espinoza, M.Espinoza, Guerrero, Jimenez, Navarrete, and Salazar are entitled to recover from the Restaurant, Milner, and Aquino jointly and severally, unpaid overtime wages for work actually performed, an additional equal amount in liquidated damages, costs, reasonable attorneys' fees, and post-judgment interest pursuant to the FLSA § 16(b), 29 U.S.C. § 216(b).

## FOURTEENTH CAUSE OF ACTION

### The Restaurant, Milner, and Aquino: Unpaid Overtime Under the NYMWA

178.    Plaintiffs repeat and reallege paragraphs 1 through 177 as if fully set forth herein.

179.    The Restaurant, Milner, and Aquino failed to pay plaintiffs Campos, Escamilla, E.Espinoza, M.Espinoza, Guerrero, Jimenez, Navarrete, and Salazar overtime for hours

worked in excess of forty per week, as required by the NYMWA and its regulations, specifically N.Y. Lab. Law § 21(11) and N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.3.

180.    The Restaurant, Milner, and Aquino's failure to pay overtime wages was willful.

181.    As a consequence of the Restaurant, Milner, and Aquino's willful violation of the Labor Law, plaintiffs Campos, Escamilla, E.Espinoza, M.Espinoza, Guerrero, Jimenez, Navarrete, and Salazar are entitled to recover from the Restaurant, Milner, and Aquino jointly and severally, unpaid overtime wages for work actually performed, 100 percent of that amount as liquidated damages, costs, reasonable attorneys' fees, and pre- and post-judgment interest pursuant to N.Y. Lab. Law § 663(1).

FIFTEENTH CAUSE OF ACTION

The Restaurant, Milner, and Aquino: Unpaid Minimum Wages Under the FLSA

182.    Plaintiffs repeat and reallege paragraphs 1 through 181 as if fully set forth herein.

183.    By the acts and practices described above, the Restaurant, Milner, and Aquino failed to pay plaintiffs Campos, Escamilla, E.Espinoza, M.Espinoza, Guerrero, Jimenez, Navarrete, and Salazar the minimum hourly wage, in violation of the FLSA.

184.    The Restaurant, Milner, and Aquino willfully violated the FLSA and/or showed reckless disregard for statutorily protected rights.

185.    As a consequence of the Restaurant, Milner and Aquino's violation of the FLSA, plaintiffs Campos, Escamilla, E.Espinoza, M.Espinoza, Guerrero, Jimenez, Navarrete, and Salazar are entitled to recover from the Restaurant, Milner, and Aquino jointly and severally, their unpaid minimum wages, an additional equal amount in liquidated damages, costs,

reasonable attorneys' fees, and post-judgment interest pursuant to the FLSA § 16(b), 29 U.S.C. § 216(b).

SIXTEENTH CAUSE OF ACTION

The Restaurant, Milner, and Aquino: Unpaid Minimum Wages Under the NYMWA

186.    Plaintiffs repeat and reallege paragraphs 1 through 185 as if fully set forth herein.

187.    The Restaurant, Milner, and Aquino failed to pay plaintiffs Campos, Escamilla, E.Espinoza, M.Espinoza, Guerrero, Jimenez, Navarrete, and Salazar the minimum hourly wage as required by the NYMWA.

188.    The Restaurant, Milner, and Aquino's failure to pay plaintiffs the minimum hourly wage was willful.

189.    As a consequence of the Restaurant, Milner, and Aquino's willful violation of the NYMWA, plaintiffs Campos, Escamilla, E.Espinoza, M.Espinoza, Guerrero, Jimenez, Navarrete, and Salazar are entitled to recover from the Restaurant, Milner, and Aquino jointly and severally, their unpaid minimum wages, 100 percent of that amount as liquidated damages, costs, reasonable attorneys' fees, and pre- and post-judgment interest pursuant to N.Y. Lab. Law § 663(1).

SEVENTEENTH CAUSE OF ACTION

The Restaurant, Milner, and Aquino: Failure to Pay Wages

190.    Plaintiffs repeat and reallege paragraphs 1 through 189 as if fully set forth herein.

191.    By failing to pay Campos, Escamilla, E.Espinoza, M.Espinoza, Galindo, Guerrero, Jimenez, Navarrete, Ramirez, and Salazar the full wages to which they were entitled, the Restaurant, Milner, and Aquino violated Labor Law § 191.

192.    The Restaurant, Milner, and Aquino's failure to pay unpaid wages was willful within the meaning of the Labor Law.

193.    As a consequence of the Restaurant, Milner, and Aquino's violation of the Labor Law, Campos, Escamilla, E.Espinoza, M.Espinoza, Galindo, Guerrero, Jimenez, Navarrete, Ramirez, and Salazar are entitled to recover from the Restaurant, Milner, and Aquino jointly and severally, their unpaid wages, 100 percent of that amount as liquidated damages, costs, reasonable attorneys' fees, and pre- and post-judgment interest pursuant to N.Y. Lab. Law § 198.

## EIGHTEENTH CAUSE OF ACTION

### The Restaurant, Milner, and Aquino: Unlawful Deductions From Wages

194.    Plaintiffs repeat and reallege paragraphs 1 through 193 as if fully set forth herein.

195.    By unlawfully deducting hours plaintiffs Campos, Escamilla, E.Espinoza, M.Espinoza, Galindo, Guerrero, Jimenez, Navarrete, Ramirez, and Salazar had worked from the calculation of their wages, the Restaurant, Milner, and Aquino violated Labor Law § 193.

196.    The Restaurant, Milner, and Aquino's failure to pay unpaid wages was willful within the meaning of the Labor Law.

197.    As a consequence of the Restaurant, Milner, and Aquino's violation of the Labor Law, Campos, Escamilla, E.Espinoza, M.Espinoza, Galindo, Guerrero, Jimenez, Navarrete, Ramirez, and Salazar are entitled to recover from the Restaurant, Milner, and Aquino

jointly and severally, damages in the amount of unlawful deductions from wages, 100 percent of that amount as liquidated damages, costs, reasonable attorneys' fees, and pre- and post-judgment interest pursuant to N.Y. Lab. Law § 198.

## NINETEENTH CAUSE OF ACTION

### The Restaurant, Milner, and Aquino: Unpaid Spread of Hours Under the Labor Law

198.   Plaintiffs repeat and reallege paragraphs 1 through 197 as if fully set forth herein.

199.   The Restaurant, Milner, and Aquino failed to pay plaintiffs Campos, Escamilla, E.Espinoza, M.Espinoza, Navarrete, and Ramirez the spread of hours pay for days on which more than 10 hours elapsed from the time they started work to the time they left work for the day, in violation of N.Y. Lab. Law § 21(11) and N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7.

200.   The Restaurant, Milner, and Aquino willfully violated the NYMWA and/or showed reckless disregard for the statutorily protected rights of plaintiffs Campos, Escamilla, E.Espinoza, M.Espinoza, Navarrete, and Ramirez.

201.   As a consequence of the Restaurant, Milner, and Aquino's violation of the Labor Law, plaintiffs Campos, Escamilla, E.Espinoza, M.Espinoza, Navarrete, and Ramirez are entitled to recover from the Restaurant, Milner, and Aquino jointly and severally, damages in the amount of unpaid spread of hours wages, 100 percent of that amount as liquidated damages, costs, reasonable attorneys' fees, and pre- and post-judgment interest pursuant to N.Y. Lab. Law § 663(1).

## TWENTIETH CAUSE OF ACTION

The Restaurant, Milner, and Aquino: Unlawful Retention of Gratuities Under the Labor Law

202.    Plaintiffs repeat and reallege paragraphs 1 through 201 above as if fully set forth herein.

203.    The Restaurant, Milner, and Aquino retained a portion of the gratuities earned by M.Espinoza, Jimenez, and Navarrete, in violation of the New York State Labor Law § 196-d.

204.    The Restaurant, Milner, and Aquino's retention of M.Espinoza, Jimenez, and Navarrete's gratuities was willful.

205.    As a consequence of the Restaurant, Milner, and Aquino's violation of the Labor Law, M.Espinoza, Jimenez, and Navarrete are entitled to recover from the Restaurant, Milner, and Aquino jointly and severally, damages in the amount of unlawfully retained gratuities, 100 percent of that amount as liquidated damages, costs, reasonable attorneys' fees, and pre- and post-judgment interest pursuant to N.Y. Lab. Law § 198.

## TWENTY-FIRST CAUSE OF ACTION

The Restaurant, Milner, and Aquino: Improper Expense Payments Under the Labor Law

206.    Plaintiffs repeat and reallege paragraphs 1 through 205 above as if fully set forth herein.

207.    The Restaurant, Milner, and Aquino required M.Espinoza, Jimenez, and Navarrete to purchase a uniform without reimbursing them for those expenses.

208.    The Restaurant, Milner, and Aquino required M.Espinoza, Jimenez, and Navarrete to purchase and maintain their bicycles and related equipment, which were used for the purposes of work, without reimbursing them for those expenses.

209. By the acts and practices described above, the Restaurant, Milner, and Aquino required M.Espinoza, Jimenez, and Navarrete to incur expenses that should have been borne by the defendants in violation of New York State Labor Law § 193(2).

210. The Restaurant, Milner, and Aquino willfully violated N.Y. Labor Law § 193(2).

211. As a consequence of the Restaurant, Milner, and Aquino's unlawful conduct, M.Espinoza, Jimenez, and Navarrete are entitled to recover from the Restaurant, Milner, and Aquino jointly and severally, all improper expenses incurred by M.Espinoza, Jimenez, and Navarrete, 100 percent of that amount as liquidated damages, costs, reasonable attorneys' fees, and pre- and post-judgment interest pursuant to N.Y. Lab. Law § 198(1-a).

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court enter a Judgment:

(a) Declaring that defendants' conduct complained of herein violates plaintiffs' rights under the FLSA, NYMWA, Labor Law, Executive Law, and City Law; enjoining and permanently restraining defendants from violating the FLSA, NYMWA, Labor Law, Executive Law, and City Law;

(b) Directing defendants to take such affirmative steps as are necessary to ensure that the effects of their unlawful practices under the Executive and City Law are eliminated and do not continue to affect plaintiffs' employment opportunities;

(c) Directing defendants to pay plaintiffs Escamilla, Galindo, and Salazar compensatory damages, including damages for emotional distress, humiliation, and pain and suffering and interest thereon;

(d)     Directing defendants to pay an additional amount as punitive damages for their willful and/or reckless disregard for the statutory rights of Escamilla, Galindo, and Salazar;

(e)     Awarding plaintiffs the unpaid minimum wages and overtime compensation due to them under the FLSA;

(f)     Awarding plaintiffs the unpaid minimum wages and overtime compensation due to them under the NYMWA and its regulations;

(g)     Awarding plaintiffs unpaid and deducted wages due to them under the Labor Law;

(h)     Awarding plaintiffs the spread of hours pay due to them under the Labor Law;

(i)     Awarding plaintiffs compensation for gratuities unlawfully retained by defendants under the Labor Law;

(j)     Awarding plaintiffs compensation for all improper expenses plaintiffs were required to pay;

(k)     Awarding plaintiffs liquidated damages under the FLSA because of defendants' willful failure to pay the minimum wage and overtime in violation of the FLSA;

(l)     Awarding plaintiffs liquidated damages under the Labor Law §§ 198(1-a), 663(1), because of defendants' willful failure to pay the minimum wage, overtime, wages earned, spread of hours, and illegal deductions; and defendants' willful and unlawful retention of plaintiffs' gratuities, in violation of the Labor Law;

(m)     Directing defendants to pay plaintiffs' attorneys' fees, costs and disbursements;

(n)     Directing defendants to pay pre- and post-judgment interest; and

(o)    Granting such other and further relief as this Court deems necessary and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiffs demand a trial by jury in this action.

Dated: New York, New York
       May 10, 2011

VLADECK, WALDMAN, ELIAS
& ENGELHARD, P.C.

By:    _____

Milton L. Williams, Jr.
Rebecca J. Osborne
Liane T. Rice
1501 Broadway, Suite 800
New York, New York 10036
212-403-7300

URBAN JUSTICE CENTER

By:    _____

Amy Tai
123 William Street, 16th Floor
New York, New York 10038
646-602-3600